JOHN THEOFEL, Plaintiff, *v.* JAMES C. SHERIDAN, Defendant.

Supreme Court, Queens County, April 30, 1934.

*William E. Kennedy,* for the motion.

*Charles W. Froessel,* opposed.

BONYNGE, J.  The plaintiff is, and for some years has been, the chairman of the executive committee of the county committee of the Democratic party in Queens county.  In actual practice he has been recognized as the spokesman of his party in Queens county, although the local rules of the party define his duties in this rather meagre fashion: " The Chairman of the Executive Committee shall possess and exercise all rights, privileges, powers and duties granted or imposed by statute, rule or otherwise on the Chairman of the Executive Committee of a County Committee and upon the Chairman of such County Committee and such other rights, privileges, powers or duties as may be prescribed by any regularly adopted rule or regulation relating thereto."

The voluminous papers submitted upon this motion make no reference to " any regularly adopted rule or regulation " enlarging the powers or prerogatives of the plaintiff, and hence it must be assumed that the extensive authority, now claimed for his office, grew out of either custom and usage or out of the submissiveness and confidence of his followers.

At a meeting of the executive committee, regularly called and held on March 3, 1934, the following resolutions were adopted with practical unanimity:

" *Resolved,* that James C. Sheridan, a member of this Committee, be and he hereby is designated as the spokesman for this Committee and as the leader of the Democratic Party in Queens County,

with full power and authority, between sessions of this Executive Committee, to exercise all rights, privileges and powers conferred upon, and to discharge all duties, responsibilities and trusts reposed in, this Executive Committee under and by the provisions of Rule X quoted above; and be it further

" *Resolved,* that any and all action heretofore taken inconsistent herewith, and any right and authority to act for and on behalf of this Executive Committee heretofore expressly or impliedly given to the present Chairman thereof, hereby is rescinded and revoked."

So far as this record discloses, the concluding words of the last resolution, revoking " any right or authority " previously granted to the plaintiff as chairman, were dictated by the supercaution of the draftsman, since no *legal* enlargement of the plaintiff's powers at any time is shown.

The determination of this motion requires no consideration of the effect of the powers delegated, or attempted to be delegated to the defendant by his fellow committeemen. Their frank avowal of him as " leader " furnishes at least a refreshing contrast to the usual diplomatic denial of the existence of any such personage in the councils of a political body. The sole question here is, whether the plaintiff has been shorn of any attribute of his office, which a court of equity has the power to restore to him.

Prior to March 3, 1934, the plaintiff held the two cherished rewards of a successful political career — he was the titular head or spokesman of his party and he commanded the fealty and obedience of his followers. He spoke with authority, not because of anything set down in the rules of the party organization, but through the sure knowledge that his word was law. The office he still continues to hold, but the confidence and loyalty of another day are now things of the past. The underlying reasons for this mass desertion of the clansmen are no present concern. Conceivably they may have detected a waning of the chieftain's former capacity for leadership, or again they may have been seduced by the promise of larger rubies by other suitors. In a legal sense the defendant has lost nothing because he still continues to hold the empty shell of an office entailing purely nominal duties. That of which he has really been deprived is an intangible thing, with which the law is powerless to grapple. Tragedies of the kind are inseparable from any calling. No chancellor has yet fashioned a decree to solace the humiliation of an eloquent divine whose parishioners have forsaken him for the golf courses, or of a once popular actor who plays to empty stalls while the inspiring plaudits of a happier day are showered upon Mickey Mouse at a neighboring silver screen.

The motion for a temporary injunction will be denied upon condition that the defendant stipulate to accept short notice of trial and proceed to trial on May 22, 1934, for which day the case is now set down, subject to the approval of the justice presiding. Settle order on notice.